1  ROBERT J. ROSATI, No. 112006
   robert@erisalg.com
2  RAQUEL M. BUSANI, No. 323162
   raquel@erisalg.com
3  6485 N. Palm Ave.,
   Fresno, California  93704
4  Telephone: 559-478-4119
   Facsimile: 559-478-5939
5

6  Attorneys for Plaintiff, *BARBARA DERVIEUX*

7  **UNITED STATES DISTRICT COURT**

8  **NORTHERN DISTRICT OF CALIFORNIA**

9  **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 10  BARBARA DERVIEUX, | CASE NO.: |
| 11                 Plaintiff, | **COMPLAINT** |
| 12  vs. | |
| 13  UNITED OF OMAHA LIFE INSURANCE COMPANY, | |
| 14 | |
| 15                 Defendant. | |

16      Plaintiff, BARBARA DERVIEUX ("Plaintiff" or "Dervieux") alleges as follows:

17                                    **JURISDICTION**

18      1.      Plaintiff's claim for relief arises under the Employee Retirement Income Security

19  Act of 1974, as amended ("ERISA"), 29 U.S.C. section 1132(a)(1) and (a)(3).  Pursuant to 29

20  U.S.C. section 1331, this court has jurisdiction over this action because this action arises under the

21  laws of the United States of America.  29 U.S.C. section 1132(e)(1) provides for federal district

22  court jurisdiction of this action.

23                                        **VENUE**

24      2.      Venue is proper in the Northern District of California because Plaintiff was and is a

25  resident of the City of Petaluma, in the County of Sonoma, California, when Defendant denied her

26  long-term disability benefits and denied her appeal of that decision.  Therefore, 29 U.S.C. section

27  1132(e)(2) provides for venue in this Court.  Intradistrict venue is proper in this Court's San

28  Francisco Division.

**PARTIES**

3.      Plaintiff is, and at all times relevant hereto was, a participant, as that term is

defined by 29 U.S.C. section 1000(7), of the Group Long Term Disability Benefits Patriot Growth

Insurance Services, LLC ("The Plan") and thereby entitled to receive benefits therefrom.  Plaintiff

was a beneficiary because she was an employee of Patriot Growth Insurance Services, LLC, which

established The Plan.  The Plan is an employee welfare benefit plan organized and operating under

the provisions of ERISA, 29 U.S.C. section 1001 et seq.

4.      Defendant United of Omaha Life Insurance Company, ("United"), issued Group

Policy No.: GLTD-BGBF ("The Policy") to Patriot Growth Insurance Services, LLC, by which

long term disability benefits are provided by The Plan.

5.      United, the insurer and decision maker for The Plan, denied Dervieux's benefits at

issue in this action, denied her appeal of that denial, and is legally liable for providing the benefits

sought herein.

**CLAIM FOR RELIEF**

6.      The Policy provides long-term disability ("LTD") benefits to employees of Patriot

Growth Insurance Services, LLC.  Such benefits potentially could continue until the claimant

reaches the Normal Social Security Retirement Age, which for Plaintiff herein is the age of 66 and

2 months.

7.      In order to be eligible for LTD benefits under The Policy, an employee must meet

The Policy's specific provisions.  Relevant provisions include:

A.      "Total Disability" is defined as:

"If You are Disabled and satisfy the Occupation Test and/or You
are earning less than 20% of Your Indexed Pre-Disability Earnings
under the Earnings Test, the Monthly Benefit while Disabled is the
lesser of:

a) 60% of Your Basic Monthly Earnings, less Other Income

Sources, except any income benefits for which Your Spouse or
Dependent Child are eligible under the U.S. Social Security Act are
not included in Other Income Sources; or.

b) the Maximum Monthly Benefit, less any Other Income
Sources."

2

**COMPLAINT**

1
2
3
4

"Disability and Disabled mean that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which You satisfy either the Occupation Test or the Earnings Test. You need to satisfy only one test in order to be considered disabled."

B.      "Occupation Test" means:

5

"a) during the first 24.0 months, You are prevented from performing at least one of the Material Duties of Your Regular Occupation; and

6
7

b) after a Monthly Benefit has been paid for 24-months, You are unable to perform at least one of the Material Duties of any Gainful Occupation."

8

C.      "Earnings Test" means:

9
10

"You are unable to generate Current Earnings which exceed 80% of Your Basic Monthly Earnings in Your Regular Occupation or any Gainful Occupation.

11
12
13

After a Monthly Benefit has been paid for 2 years, Disability and Disabled mean You are unable to perform all of the Material Duties of any Gainful Occupation.  Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with the Policyholder."

14

D.      "Material Duties" means:

15
16
17

"the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified. In no event will We consider working an average of more than the required Full-Time hours per week in itself to be a part of material duties. One of the material duties of Your Regular Occupation is the ability to work for an employer on a full-time basis."

18
19

E.      "Maximum Capacity" means:

"Based on Your medical restrictions and limitations:

20
21

a) during the first 24 months of Disability payments, the greatest extent of work You are able to do in Your Regular Occupation; and

22
23
24

b) after 24 months of Disability payments, the greatest extent of work You are able to do in any occupation that is reasonably available and for which You are reasonably fitted by education, training, or experience."

25

F.      "Mental Disorder" means:

26
27
28

"Mental Disorder means any condition or disease, regardless of its cause, listed in the most recent edition of the International Classification of Diseases (ICD) and the Diagnostic and Statistical Manual of Mental Disorders (DSM) as a mental disorder. Not included in this definition are conditions or diseases related to

3

**COMPLAINT**

Alcohol and Drug Abuse and/or Substance Abuse."

G.       "Physician" means:

"any of the following licensed practitioners:

a) a doctor of medicine (MD), osteopathy (DO), podiatry (DPM) or chiropractic (DC);

b) a licensed doctoral clinical psychologist;

c) a Master's level counselor and licensed or certified social worker who is acting under the supervision of a doctor of medicine or a licensed doctoral clinical psychologist;

d) a licensed physician's assistant (PA) or nurse practitioner (NP); or

e) where required by law, any other licensed practitioner of a healing art who is acting within the scope of his/her license."

H.       "Regular Occupation" is defined as:

"the occupation You are routinely performing when Your Disability begins. Your regular occupation is not limited to Your specific position held with the Policyholder but will instead be considered to be a similar position or activity based on job descriptions included in the most current edition of the U.S. Department of Labor Dictionary of Occupational Titles (DOT). We have the right to substitute or replace the DOT with another service or other information that We determine to be of comparable purpose, with or without notice. To determine Your regular occupation, We will look at Your occupation as it is normally performed in the national economy, instead of how work tasks are performed for a specific employer, at a specific location, or in a specific area or region."

I.       "Total Disability" or "Totally Disabled" will be defined as follows:

1.       During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of his or her regular occupation.

2.       After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of any gainful occupation which his or her training, education or experience will reasonably allow."

4

**COMPLAINT**

8.      The Policy includes the following limitation:

"Mental Disorder" limitation is described as:

"If You are Disabled and Your Disability is a result of a Mental Disorder, Your benefits will be limited to a total of 24 months while insured under the Policy, unless You are confined as a resident inpatient in a Hospital due to Your Mental Disorder at the end of that 24-month period. The Monthly Benefit will continue to be paid during such confinement.

If You are still Disabled when You are discharged from a Hospital, the Monthly Benefit will be paid for a recovery period of up to 90 additional days. If You become re-confined as a resident inpatient in a hospital during the recovery period for at least 14 consecutive days, benefits will be paid for the duration of the subsequent confinements."

The AbsencePro Management Arrangement

9.      Dervieux is informed and believes, based on an "Action Plan," dated April 30, 2021, by United's Erin Kanne concerning Dervieux's claim, that United and Patriot Growth Insurance Services, LLC, have a related and complementary contract to The Policy, concerning AbsencePro Management, wherein FMLA benefits are granted upon submission of a doctor's certification and that disability benefits under The Policy are to be granted without additional medical information.

10.     United's claim file includes an "Action Plan," dated April 30, 2021, which provides, in part:

"Special Handling Note:
Group (i.e., Dervieux's employer, the LTD policyholder) has requested that the shared AbsencePro medical certification be used to assess disability. The APS should not be requested. If the physician provides medical certification, the disability approval dates should align without additional medical information."

11.     By letter dated December 29, 2020, Mutual of Omaha, bearing the website address for AbsencePro, "AbsencePro.absencemagmet.com," and the "Patriot Growth Insurance Services" logo, acknowledged receipt of Ms. Dervieux's request for leave from her position due to a serious health condition. The letter stated her leave was not yet approved. It told her that in order to be approved, she must "have the attached certification completed and returned to AbsencePro by the due date. . . ." The letter was signed by AbsencePro.

5

**COMPLAINT**

12. On February 19, 2021, Ms. Mallory Paige Mullikin, NP, completed a FMLA or Leave Absence Medical Certification Employee's Serious Health Condition form to AbsencePro – fulfilling the requirement of "physician provides medical certification."

13. AbsencePro continued to approve Dervieux's leave from prior to March 14, 2021, at least through December 1, 2021.

14. Therefore, United should have approved Dervieux's LTD benefits upon application and continued to approve those benefits  at least through December 1, 2021, based on the AbsencePro arrangement/agreement.

15. Dervieux was employed as an Operations Manager for Patriot Growth.

16. Dervieux became disabled on December 14, 2020.

17. Dervieux timely applied for LTD benefits from United .

18. United determined that: Dervieux's "Basic Monthly Earnings" were $10,285.10; her "Basic Monthly Benefit is $6,771.06; and that Dervieux's LTD benefits would begin March 14, 2021, after the end of The Policy's Elimination Period.

19. United obtained a "Medical File Review" by Grey Taulberg, RN, CNC, dated April 6, 2021.

20. United then obtained a medical records review, through Dane Street, LLC, from Joann Mundin, M.D., dated April 26, 2021.

21. By letter dated May 4, 2021, signed by Erin Kanne, United denied Dervieux's claim for LTD benefits, and invited her to appeal that decision.

22. By letter dated October 18, 2021, Dervieux, through counsel, appealed the denial of her LTD benefits.  Dervieux's appeal asserts:

    A. United was obligated to grant LTD benefits pursuant to the terms of the AbsencePro agreement;

    B. United failed to consider Dervieux's receipt of California SDI benefits, other than as a reduction of monthly LTD benefits;

    C. United withheld pertinent documents in its claim file from Dervieux and her counsel;

**COMPLAINT**

D.      United failed to properly evaluate Dervieux's claim and records, which demonstrate that she is incapable of performing at least one of the Material Duties of her Regular Occupation;

E.      United failed to properly evaluate the Material Duties of Dervieux's Regular Occupation;

F.      Reports from Dane Street are suspect;

G.      The reports of Nurse Taulberg and Dr. Mundin are not credible, reliable or persuasive; and

H.      Dervieux is disabled under the terms of The Policy and entitled to LTD benefits.

23.     In response to Dervieux's appeal, United obtained a file review by Dr. David P. Yuppa, dated November 10, 2021.

24.     By letter dated November 16, 2021, United invited Dervieux to review and comment on Dr. Yuppa's file review.

25.     By letter dated November 19, 2021, Dervieux, through counsel, submitted her timely comments to United concerning Dr. Yuppa's report, explaining that Dr. Yuppa's opinions, properly construed, demonstrate Dervieux is disabled under the terms of The Policy, that he misunderstood The Policy's requirements in his analysis, and that United asked the wrong questions of him.

26.     United obtained an "Occupational Analysis" of Dervieux's occupation in the national economy, dated December 7, 2021, by its employee, Jennifer Belew, MSEd, Sr. Vocational Rehabilitation Specialist.

27.     United obtained a "Clarification" dated December 13, 2021, from Dr. Yuppa.

28.     By letter dated December 15, 2021, United provided Dervieux with the Clarification dated December 13, 2021, by Dr. David P. Yuppa and the "Occupational Analysis" dated December 7, 2021, by Jennifer Belew.

29.     By letter dated December 20, 2021, Dervieux, through counsel, timely provided her comments to United's new medical report and its vocational report.  Dervieux explained

**COMPLAINT**

therein that:

        A.     Ms. Belew's "Occupational Analysis" is materially wrong; and

        B.     Dr. Yuppa's conclusion that Ms. Dervieux's comparatively low level of treatment does not demonstrate disability, misconstrues and misapplies The Policy's requirements which entitle Dervieux to LDT benefits if she is prevented from performing a single material duty of her Regular Occupation, which the facts demonstrate to be the case.

30.     By letter dated January 5, 2022, United denied Dervieux's appeal from the denial of her LTD benefits.

31.     United's denial of Plaintiff's long-term disability benefits was arbitrary and capricious, an abuse of discretion and in violation of the terms of The Policy.

32.     Dervieux has performed all conditions precedent required to be performed on her part.

33.     Plaintiff has exhausted all administrative remedies required to be exhausted by the terms of The Policy and by ERISA.

34.     At all times mentioned herein Plaintiff was, and continues to be, totally disabled under The Policy's definition of totally disabled and therefore entitled to benefits under the terms of the Policy.

35.     ERISA section 503, 29 U.S.C. section 1133 provides:

> "In accordance with regulations of the Secretary, every employee benefit plan shall"
>
> (1)    provide adequate notice in writing to any participant, beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reason for such denial, written in a manner calculated to be understood by the participant, and
>
> (2)    afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

36.     Defendant was required to provide Plaintiff a full and fair review of her claim for benefits pursuant to 29 U.S.C. §1133 and its implementing Regulations.  Specifically:

> a.    29 U.S.C. §1133 mandates that, in accordance with the Regulations of the Secretary of Labor, every employee benefit plan, including defendant herein, shall provide adequate notice in writing to any participant or

8

**COMPLAINT**

beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant and afforded a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by an appropriate named fiduciary of the decision denying the claim.

b.      The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. §1133.  These Regulations are set forth in 29 C.F.R. § 2560.503-1 and provide, as relevant here, that employee benefit plans shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

    i.      Such procedures comply with the specifications of the Regulations.

    ii.      The claims procedures contain administrative processes and        safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

    iii.      Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

    iv.      The plan is required to provide a full and fair review of any adverse determination which includes:

        a.      That a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of all documents, records, and other information relevant to the claimant's claim for benefits.

        b.      A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination; (2) was submitted,

**COMPLAINT**

1

2

considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (3) demonstrates compliance with the administrative processes and safeguards required pursuant to the Regulations in making the benefit determination; or (4) constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit without regard to whether such statement was relied upon in making the benefit determination.

3

4

5

6

7

8

c.      The Regulations further provide that for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

9

10

11

12

d.      The Regulations further provide that, in deciding an appeal of any adverse determination that is based in whole or in part on a medical judgment that the appropriate named fiduciary shall consult with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

13

14

15

16

e.      The Regulations further require a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual.

17

18

19

20

f.      The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection adverse benefit determination which was the subject of the appeal nor the  subordinate of any such individual.

21

22

23

24

25

g.      The Regulations further provide that before a plan can issue an adverse benefit determination on review of a disability benefit claim, the plan administrator shall provide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination in connection with the claim as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided to give the claimant a reasonable opportunity to respond prior to that date.

26

27

28

37.      United did not provide Dervieux a full and fair review of her claim:

A.      United did not provide Dervieux copies of all documents relevant to her

**COMPLAINT**

claim for benefits.

      B.     Dervieux is informed and believes, and thereon alleges, that United does not have and/or does not follow administrative processes and safeguards required pursuant to ERISA Regulations.

38.     Review is *de novo* because The Policy does not delegate discretion to United in The Policy or in any other plan document.

39.     The Policy was issued with an effective date January 1, 2019, in the State of Colorado.  Colorado law provides "an insurance policy, insurance contract, or plan that is issued in this state that offers health or disability benefits shall not contain a provision purporting to reserve discretion to the insurer, plan administrator, or claim administrator to interpret the terms of the policy, contract, or plan or to determine eligibility for benefits.  C. R. S. §10-3-1116(2).  Similarly, California Insurance Code section 11010.6 also bans such discretionary clauses.  Therefore, any discretionary clause in any plan document is void.

40.     If, for any reason, the Court should conclude that review is for abuse of discretion, this Court should review United's decision with a high level of skepticism because:

      A.     United is both the administrator and the funding source for the Policy, and therefore has a conflict of interest.

      B.     United failed to comply with ERISA's procedural requirements regarding benefit claims procedures and full and fair review of benefit claim denials.

      C.     United failed to consider all the evidence and comments presented by Plaintiff in the course of her appeals.

      D.     United's decision-making was influenced by its financial conflict of interest.

      E.     United relied upon unsubstantiated vocational opinions and reports.

41.     There is no substantial evidence to support United's decision to deny Dervieux's LTD benefits and that decision is contrary to the terms of The Policy.

42.     An actual controversy has arisen and now exists between Plaintiff and Defendant with respect to whether Plaintiff is entitled to LTD benefits under The Policy.

**COMPLAINT**

43.     Plaintiff contends, and United disputes, that Plaintiff is entitled to past and continuing LTD benefits under the terms of The Policy because Plaintiff contends, and Defendant United disputes, that Plaintiff is and has been totally disabled under the terms of The Policy.

44.     Plaintiff desires a judicial determination of her rights and a declaration as to which party's contention is correct, together with a declaration that Defendant United is obligated to pay long-term disability benefits, retroactive to the first day her benefits were denied, until and unless such time that Plaintiff is no longer eligible for such benefits under the terms of The Policy.

45.     A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

46.     As a proximate result of Defendant United's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which she is entitled under the terms of The Policy.  Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

WHEREFORE, Plaintiff prays judgment as follows:

1.     For declaratory judgment against United, requiring it to: (a) pay long term disability benefits under the terms of The Policy to Plaintiff from the date said benefits should have been paid (March 14, 2021) to the date of judgment and thereafter until March 13, 2023, until and unless it is thereafter determined that Plaintiff is no longer entitled to benefits under the terms of The Policy.

3.     For attorney's fees pursuant to statute against United.

4.     For costs of suit incurred.

5.     For such other and further relief as the Court deems just and proper.

Dated:  April 26, 2022

/s/ Robert J. Rosati
ROBERT J. ROSATI, No. 112006

Attorney for Plaintiff,
BARBARA DERVIEUX

12
**COMPLAINT**